UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTIAN J. HOLT,<br>　　　　Plaintiff | ) | CIVIL ACTION NO. 1:19-CV-01986 |
| | ) | |
| | ) | (WILSON, D.J.) |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| CITY OF HARRISBURG, *et al.*<br>　　　　Defendants | ) | |
| | ) | |

## MEMORANDUM OPINION

### I. INTRODUCTION

In the early morning hours of June 9, 2018, Christian Holt ("Holt") was stopped by Harrisburg Police Officer John Rosinski in what became a "use of force incident." Two days later Holt and his father complained about the use of force to the Police Chief. Four weeks later criminal charges were filed against Holt only to be dismissed fifteen months later on state "prompt trial" grounds without reaching the merits of the charges. Holt brings this case for violations of his civil rights seeking damages against the City and Officer Rosinski.

In July of 2018 the Harrisburg Police Bureau conducted an internal affairs investigation. The City asserts a "deliberative process privilege" to avoid disclosing the Internal Affairs Report. This discovery dispute was referred to me. During a discovery phone call the parties suggested that the report be submitted to me for *in camera* review.

## II. PROCEDURAL HISTORY

On May 11, 2021, a telephone conference was held for the purpose of resolving the pending discovery disputes outlined in a letter to the Court (Doc. 57). During that call the discovery issue was discussed, and counsel agreed to continue to confer to resolve the issue. During a second telephone conference on May 26, 2021, the parties indicated they could not resolve by agreement the disclosure of the contents of the Internal Affairs Investigation Report. The Court agreed to review the Report *in camera* and decide the issue of disclosure (Docs. 62, 63).[1]

The Executive and Law Enforcement privileges initially asserted by the City were withdrawn during the May 11, 2021 telephone conference. The City however asserted the deliberative process privilege and the issue of relevance regarding disclosure of the Internal Affairs Report.

On June 11, 2021, Counsel for the City submitted directly to my chambers "a copy of the Harrisburg Bureau of Police Internal Affairs documents that have been batestamped (sic) "IA 1-23" along with six officer recorded statements …" via email.

---

[1] The district court may elect to perform a preliminary *in camera* review of the documents in question before balancing the competing interests and exercising its discretion. An *in camera* review is a highly appropriate and useful means of dealing with claims of governmental privilege. *Redland Soccer Club, Inc. v. Dep'tt of Army of U.S.*, 55 F.3d 827, 855 (3d Cir. 1995)

I reviewed the documents, listened to the six interviews, and researched the deliberative process privilege. This procedure was done in lieu of a formal discovery motion and without the benefit of briefing by the parties. Based on this review, I find the written report is protected by the privilege, but the recorded statements are not. Should either party disagree with my analysis, they may confer with opposing counsel and then file a formal motion with briefing to protect or require disclosure.

### III. FACTUAL BACKGROUND[2]

On June 9, 2018 at 2:15 a.m., Christian J. Holt stopped for gas at a Sunoco A-Plus Convenience store in Harrisburg. Officer John Rosinski pulled into the gas station displaying flashing emergency lights. Rosinski ordered Holt to get back into Holt's car but then grabbed him, withdrew a pistol from Holt's right hip, threw the gun into the back seat of Holt's car and punched Holt multiple times in the face and head. Holt was then subjected to field sobriety and breathalyzer tests[3] and taken to the Dauphin County jail where he was processed, subjected to a blood draw, and released from custody.

Two days later, on June 11, 2018, Mr. Holt and his father met with Harrisburg Police Chief Thomas Carter ("Chief") to complain about the conduct of the police officers during

---

[2] This factual narrative is taken from the Joint Case Management Plan (Doc. 12) and is provided for context. The Court does not make any factual determination as a part of this discovery dispute decision. This narrative was prepared before reviewing the Internal Affairs Report to protect any confidential information.

[3] Holt asserts that these tests were conducted by Officer Rosinski, Officer Brandon Yeager, and other unnamed Harrisburg Police Officers.

the younger Holt's apprehension.  The Chief assured them that he would fully investigate the matter and review the relevant video footage.  Later that same day the Chief called the Holts and told them that he had reviewed the video footage, that he was not happy with the conduct of his officers, and that Holt had "done nothing wrong."

Four weeks later, on July 5, 2028, Officer Rosinski filed six charges against Holt:

1) Obstructing the administration of law (18 Pa.C.S. §5101);

2) Driving under Influence Alcohol, general impairment (75 Pa.C.S. §3802(a)(1));

3) Driving under the Influence of Alcohol, lowest tier (75 Pa.C.S. §3802(a)(2));

4) Disorderly Conduct (18 Pa.C.S. § 5503(a)(4));

5) Turning Movements and Required Signals (75 Pa.C.S. §3334(a)); and,

6) Driving on Roadways Laned for Traffic (75 Pa.C.S. §3309(a)).

Holt entered a plea of Not Guilty.  Then, fifteen months later, on October 24, 2019, all charges were dismissed with prejudice pursuant to Pa. R. Crim. P. 600 (right to prompt trial).

Less than a month after the dismissal of criminal charges Holt filed this suit alleging violations of his Constitutional rights, malicious prosecution, due process violations, and *Monell* claims against the city along with state law claims of assault & battery, false imprisonment, and willful misconduct.

Officer Rosinski replied that he observed improper driving and followed Holt into the A-Plus gas station.  When confronted, Holt displayed visible signs of intoxication, and

verbally resisted his commands. Rosinski admitted seeing a gun in Holt's pocket and removing it. After taking the gun away, "In order to gain compliance, Officer Rosinski struck Mr. Holt once in the face with his fist." Holt was given a field sobriety test and failed.

The City, Chief, and Officer Yeager denied that Holt's rights were violated or that the City failed to properly train, supervise, or discipline any employee with respect to the conduct alleged by Holt. They do not explain how or why the prosecution failed without a determination on the merits.

## IV. THE INTERNAL AFFAIRS REPORT

The Internal Affairs Report consists of 23 written pages beginning with an email from Detective Christopher Krokos to Chief Carter dated August 3, 2018. Also submitted were audio recordings of statements from Officers Rosinski, Hill, Scott, Yeager, Esteban, and Restrepo. The report does not contain any written statements by the officers (except their signed Garrity Warnings[4] forms), a copy of the criminal charges against Holt including any supporting affidavit, any use of force reports, any contemporaneous recordings from the 911 center or the officer's vehicle cameras. There is no reference to any police body cameras.

With this background I now turn to the legal standards for the deliberative process privilege.

---

[4] *Garrity v. New Jersey*, 385 U.S. 493 (1967).

## V. LEGAL ANALYSIS

### A. THE DELIBERATIVE PROCESS PRIVILEGE

Federal Rule of Civil Procedure 26(b)(1) provides that a party may obtain discovery, subject to applicable evidentiary privileges, "that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). One such privilege is that of deliberative process, which authorizes the government to withhold from production documents which contain "confidential deliberations of law or policymaking, reflecting opinions, recommendations, or advice." *Johnson v. Wetzel*, No. 1:16-CV-863, 2016 WL 4158800, at *3 (M.D. Pa. Aug. 5, 2016).

The deliberative process privilege is a form of executive privilege that protects information showing the process by which a government agency reached a particular decision or crafted a specific policy from disclosure to third parties. The privilege typically allows the government to withhold testimony or documents that reflect an agency's pre-decisional: a) Advisory Opinions, b) Recommendations, and c) Deliberations.

To assert the deliberative process privilege, the government usually must:

a) Invoke it through an agency head or her subordinate who is personally knowledgeable about the information sought to be protected;

b) Identify the specific information that is protected by the privilege;

c) Give reasons for maintaining the confidentiality of the information;

d) Demonstrate that the privileged information is both pre-decisional and

deliberative.[5]

The Third Circuit has described both the process and the method the trial court should use to apply this privilege.

> The deliberative process privilege permits the government to withhold documents containing "confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice." *In re Grand Jury*, 821 F.2d 946, 959 (3d Cir.1987) (*citing NLRB v. Sears Roebuck & Co.*, 421 U.S. 132, 150–54, 95 S.Ct. 1504, 1516–18, 44 L.Ed.2d 29 (1975); *EPA v. Mink*, 410 U.S. 73, 89 & n. 16, 93 S.Ct. 827, 836–37 & 16, 35 L.Ed.2d 119 (1973)), *cert. denied sub. nom., Colafella v. United States*, 484 U.S. 1025, 108 S.Ct. 749, 98 L.Ed.2d 762 (1988). "[T]he ultimate purpose of this long-recognized privilege is to prevent injury to the quality of agency decisions." *Sears, Roebuck & Co.*, 421 U.S. at 151, 95 S.Ct. at 1516. It recognizes "that were agencies forced to operate in a fishbowl, the frank exchange of ideas and opinions would cease and the quality of administrative decisions would consequently suffer." *First Eastern Corp. v. Mainwaring*, 21 F.3d 465, 468 (D.C.Cir.1994) (quotations and internal ellipses omitted). The deliberative process privilege does not protect factual information, even if such information is contained in an otherwise protectable document, as long as the information is severable. *See In re Grand Jury*, 821 F.2d at 959. In addition, it does not protect "[c]ommunications made subsequent to an agency decision." *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir.1993).
>
> The privilege, once determined to be applicable, is not absolute. *First Eastern Corp.*, 21 F.3d at 468 n. 5; *Farley,* 11 F.3d at 1389. After the government makes a sufficient showing of entitlement to the privilege, the district court should balance the competing interests of the parties. The party seeking discovery bears the burden of showing that its need for the documents outweighs the government's interest. This Court has previously stated that "the party seeking disclosure may overcome the claim of privilege by showing a sufficient need for the material in the context of the facts or the nature of the case ... or by making a *prima facie* showing of misconduct." *In re Grand Jury*, 821 F.2d at 959 (internal citations omitted). The United States Court of Appeals for the District of Columbia, recently determined that a district court,

---

[5] Westlaw, Deliberative Process Privilege, Practical Law Glossary Item 2-522-0897 (last accessed 10/31/21).

in balancing the interests, should consider at least the following factors: "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; [and] (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." *First Eastern Corp.*, 21 F.3d at 468 n. 5.

Thus, a party's assertion of the deliberative process privilege requires a two-step review in the district court. First, it must decide whether the communications are in fact privileged. Second, the court must balance the parties' interests.

*Redland Soccer Club, Inc. v. Department of Army of U.S.,* 55 F.3d 827, 853-854 (3d Cir. 1995).

### B.  DELIBERATIVE PRIVILEGE VS. FINAL DECISION DOCUMENTS

Earlier this year the U.S. Supreme Court weighed in on the deliberative process privilege, in the context of an exception to the FOIA disclosure process.  There the Court explained the difference between deliberative documents and final decisions.

> The privilege is rooted in "the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." *Klamath*, 532 U.S. at 8–9, 121 S.Ct. 1060. To encourage candor, which improves agency decision making, the privilege blunts the chilling effect that accompanies the prospect of disclosure.
>
> This rationale does not apply, of course, to documents that embody a final decision, because once a decision has been made, the deliberations are done. The privilege therefore distinguishes between predecisional, deliberative documents, which are exempt from disclosure, and documents reflecting a final agency decision and the reasons supporting it, which are not. See *Renegotiation Bd. v. Grumman Aircraft Engineering Corp.*, 421 U.S. 168, 186, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975). Documents are "predecisional" if they were generated before the agency's final decision on the matter, and they are "deliberative" if they were prepared to help the agency formulate its

position. See *Sears*, 421 U.S. at 150–152, 95 S.Ct. 1504; *Grumman*, 421 U.S. at 184–186, 190, 95 S.Ct. 1491. There is considerable overlap between these two prongs because a document cannot be deliberative unless it is predecisional.

*United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, ___ U.S. ___, 141 S. Ct. 777, 785–86, 209 L. Ed. 2d 78 (2021)

In the documents I reviewed, there are no final decisions about the conduct of the officers and their dealings with Holt. There are recommendations regarding future actions. There are also discussions about the actions of the officers and the steps that police department should take to educate officers, including use of the Rosinski's dash cam video as a training tool. There are also discussions about the officer's judgement and to a lesser extent their motives. The report is made by an Internal Affairs Officer to the Chief of Police, who presumably is the final decision maker following an internal affairs investigation. The report does not discuss, and I do not opine, on the effect of any union contracts on individual officer discipline. From reading the submitted materials I do not know if any officer was disciplined, if any training was done, or if any policy decisions were made. Therefore, the written report is privileged.

The audio recordings present a different issue. These recordings are generally not executive level discussions, they are fact finding missions.[6] A police officer, when asked

---

[6] The "Garrity Warning" signed by each officer before being interviewed specifically state: "…neither your self-incriminating statement nor it's fruits will be used against you in a criminal proceeding." The form makes no reference to use in a civil proceeding such

the simple question "What happened?" should not be chilled in his response for fear that the response might someday be made public. Discussing the facts of a particular incident is significantly different than discussing policy about that incident. There are brief segments during the interviews where the discussion turns to what could or should have been done. Those brief segments[7] are arguably within the privilege and may be redacted by the city before disclosure. I respectfully suggest that the parties confer and enter a stipulation that the release of the entire unredacted statements does not constitute a waiver of the deliberative process privilege and is done only to insure proper context for the statements before and after the redacted portions.

**[The next page contains the decision]**

---

as this case. It is recommended that defense counsel provide plaintiff with a blank "Garrity Warning" form to help them with context for this portion of the opinion.

[7] Recorded Interview of John Rosinski on July 12, 2018 at markers 19:22 to 19:25; 20:00 to 20:07; 22:15 to 22:40; and 23:52 to 24:20. Recorded Interview of Robert Yost on August 2, 2018 at markers 12:50 to 13:50; and 14:35 to 17:10 (note, portions inaudible).

## VI. DECISION

For these reasons I find that:

1. The written Internal Affairs Report submitted to me is covered by the deliberative process privilege and is protected from discovery; and,

2. The audio recordings of officer interviews, excepting the brief segments referenced in footnote seven, are not covered by the deliberative process privilege and should be disclosed.

Should either party disagree with my analysis, they may confer with opposing counsel and then file a formal motion and brief to protect or require disclosure.

Date:  November 10, 2021                                      BY THE COURT

*s/William I. Arbuckle*
William I. Arbuckle
U.S. Magistrate Judge